UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DION BULLOCK AND JAMES DAVIS JR, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 20 cv 0457 |
| ) | |
| LASALLE COUNTY, BRIAN TOWNE, and ) | Judge Rebecca R. Pallmeyer |
| JOHN DOES, State's Attorney Felony ) | |
| Enforcement Unit Officers, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

In December 2013, Plaintiffs Dion Bullock and James Davis Jr. were driving down Interstate 80 in LaSalle County, Illinois, when they were pulled over by an officer working with the LaSalle County State's Attorney's "SAFE unit." During the interaction, two more officers showed up, along with a drug-sniffing dog who circled the car and alerted to the presence of drugs. The police searched the car, found a controlled substance, and arrested Plaintiffs. Plaintiffs eventually pled guilty to possession of a controlled substance with intent to distribute. In 2015, while Plaintiffs were serving their ten-year sentence, the Illinois Third District Appellate Court ruled in *People v. Ringland*, 2015 Ill. App. 3d 130523 ¶¶ 46–48, 33 N.E.3d 1020, 1029 (3d Dist. 2015), that the SAFE unit lacked statutory authority to patrol the highway. On January 24, 2018, the state courts granted Plaintiffs' petition for postconviction relief, vacated their guilty pleas, and ordered their immediate release. Just under two years later, on January 21, 2020, Plaintiffs filed this action [1] in federal court under 42 U.S.C. § 1983, asserting claims against the involved officers and then-LaSalle County State's Attorney Brian Towne for unreasonable seizure and false arrest. They also asserted claims against LaSalle County, alleging that the practices of the SAFE unit constituted official policy under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Defendants move to dismiss [18], arguing that these claims were filed outside the two-year statute of

limitations period. Plaintiffs contend the statute is tolled in this case under *Heck v. Humphrey*, 512 U.S. 477 (1994), but the court concludes, for the reasons explained here, that their claims are time-barred and grants Defendants' motion.

## BACKGROUND

The facts as alleged in the Amended Complaint are as follows: On December 19, 2013, Plaintiffs Bullock and Davis ("Plaintiffs"), were passengers in a rented Nissan Pathfinder with California license plates, driving east on Interstate 80. (Am. Compl. [17] ¶ 16.) Late that morning, an unmarked police vehicle pulled the rental car over, and an officer ("Officer 1") approached the driver's side window. (*Id.* ¶ 18.) Officer 1 told the driver, Tameesha Linsay, that she "was travelling in the passing lane while not overtaking a slower vehicle and there was a safety issue regarding flaps at the rear of the vehicle." (*Id.* ¶ 19.) Plaintiffs allege that, in reality, Officer 1 had stopped the vehicle merely because it had out-of-state license plates. (*Id.* ¶ 20.) Officer 1 then asked Linsay and Plaintiffs to wait on the side of the road while he reviewed Linsay's license and registration. (*Id.* ¶ 22.) Linsay did not feel she was free to remain in her vehicle, so she complied with the officer's request. (*Id.* ¶ 23.) Plaintiffs allege that they were "seized and therefore not free to leave." (*Id.* ¶ 24.)

At that point, another vehicle showed up along with two more officers ("Officer 2" and "Officer 3"). (*Id.* ¶¶ 25–27.) Officer 1 told Plaintiffs that the K-9 unit had arrived and, without permission from Plaintiffs, Officer 2 walked around the vehicle with a drug-sniffing dog. (*Id.* ¶¶ 25–28.) When the dog alerted to the vehicle, Plaintiffs were transported to the LaSalle County Sheriff's Department, and—without Plaintiffs' permission—Officer 2 drove the rental car to the police station, as well. (*Id.* ¶¶ 29–31.) The officers searched the rental car, discovered that it contained a controlled substance, and arrested Plaintiffs. (*Id.* ¶ 32.) On December 31, 2013, a grand jury found probable cause to charge Plaintiffs with unlawful possession of a controlled substance with intent to deliver (Grand Jury Charges, Ex. 2 to Def.'s MTD [19-2] (hereinafter "Grand Jury Charges"), at 1–2), and on March 21, 2014, Plaintiffs pleaded guilty to those charges.

(Guilty Pleas, Ex. 3 to Def.'s MTD [19-3] (hereinafter "Guilty Pleas"), at 1–4; Am. Compl. ¶ 33.) Plaintiffs were sentenced to ten years in the Illinois Department of Corrections and required to pay $12,540 each in fines and costs. (Bullock Docket, Ex. 1 to Pl.'s Opp'n [23-1] (hereinafter "Bullock Docket"), at 3; Davis Docket, Ex. 2 to Pl.'s Opp'n [23-2] (hereinafter "Davis Docket"), at 3.)

Plaintiffs allege that the officers involved in the pull-over and arrest were acting pursuant to, and as a result of, LaSalle County's "SAFE unit." (*Id.* ¶¶ 18, 76, 121.) The "SAFE" unit—or the State's Attorney Felony Enforcement unit—was a police division formed in 2011 by then-LaSalle County State's Attorney, Brian Towne, to "conduct drug interdiction activities along interstate highways passing through LaSalle County, Illinois." (*Id.* ¶¶ 7, 9.) In practice, the SAFE unit targeted "suspicious" vehicles with out-of-state license plates, primarily those from western states, and pulled over drivers for non-drug-related traffic violations as a pretext for searching vehicles for drugs and drug money. (*Id.* ¶ 10.) As happened here, once a SAFE unit officer stopped a vehicle, the officer would walk over to speak to the driver, and within minutes, a drug-sniffing dog would arrive and sniff around the perimeter of the vehicle. (*Id.*) If, as here, the dog detected the scent of drugs, the officer would confiscate any drugs or drug-related cash and arrest the driver and/or passengers. (*Id.*) Plaintiffs allege that SAFE unit officers sometimes confiscated money without arresting or charging the driver or passengers and that the SAFE unit often used confiscated money for improper purposes, such as travel expenses, donations to schools and sports teams, and funding for the SAFE unit itself. (*Id.* ¶¶ 7, 10–12.)

On June 3, 2015, the Third District Appellate Court of Illinois decided *People v. Ringland*, holding that the actions of the SAFE unit were unauthorized under Illinois state law. 2015 Ill. App. 3d 130523 ¶¶ 46–48, 33 N.E.3d 1020, 1029 (3d Dist. 2015). Towne had purported to establish the SAFE unit pursuant to 55 ILCS 5/3-9005(b), which authorizes the State's Attorney to appoint "one or more special investigators to serve subpoenas and summonses, make return of process, and conduct investigations which assist the State's Attorney in the performance of his duties." *Id.*

¶¶ 24, 35, 33 N.E.3d at 1024, 1026.  The Third District held that, by equipping his investigators with squad cars and ticket books for the purpose of patrolling the highways, Towne's SAFE unit had essentially "created yet another branch of law enforcement, the conduct of which falls well outside the duties contemplated by section 3-9005(b) for special investigators." *Id.* ¶¶ 46–47, 33 N.E.3d at 1029.  For that reason, the appellate court upheld the trial court's decision to grant the defendants' motions to suppress evidence seized by the SAFE unit because the actions of the unit were not authorized under Illinois state law.  *Id.* ¶ 48, N.E.3d at 1029.  On June 29, 2017, the Illinois Supreme Court affirmed that decision.  *People v. Ringland*, 2017 IL 119484 ¶¶ 33, 40, 89 N.E.3d 735, 746–47 (2017).

About four and a half months later—on November 9, 2017—Plaintiffs filed a petition for postconviction relief; on January 24, 2018, the court vacated Plaintiffs' guilty pleas and ordered Plaintiffs' immediate release.  (Bullock Docket at 4–5; Davis Docket at 4–5.)  Although the record is silent on the issue, the court presumes the successful petitions relied on *Ringland* or on a challenge to the authority of the SAFE unit.  On January 21, 2020—just under two years after their release—Plaintiffs filed this case, alleging that LaSalle County, Towne, and the involved officers violated Illinois state law and infringed upon Plaintiffs' Fourth Amendment rights in a variety of ways, including unreasonably stopping and searching the vehicle and arresting Plaintiffs without probable cause or a warrant.  (Compl. ¶¶ 60–102.)  In an amended complaint, Plaintiffs dropped all claims other than their claims under 42 U.S.C. § 1983 for unreasonable seizure and false arrest against Towne and the involved officers, as well as claims against LaSalle County under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–691 (1978), for implementing and executing the practices and policies of the SAFE unit.  (Am. Compl. ¶¶ 39–128.)  Defendants argue that these claims fall outside the two-year statute of limitations period for § 1983 claims and, accordingly, ask the court to dismiss Plaintiffs' claims as untimely.  (Def.'s MTD [19] at 1–2.)

**DISCUSSION**

"Section 1983 claims are subject to the same plausibility pleading standard as other civil causes of action." *Tucker v. City of Chicago*, 907 F.3d 487, 491 (7th Cir. 2018). As such, the court will "accept the well-pleaded facts in the complaint as true" but will not afford the same presumption of truth to "legal conclusions and conclusory allegations merely reciting the elements of the claim." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). In ruling on a motion to dismiss, the court may take judicial notice of public court documents. *Collins v. Vill. of Palatine, Ill.*, 875 F.3d 839, 842 (7th Cir. 2017).

While failure to comply with a statute of limitations is an affirmative defense that a party ordinarily must state in its responsive pleading, FED R. CIV. P. 8(c)(1), dismissal under Rule 12(b)(6) is appropriate where "the complaint contains everything necessary to establish that the claim is untimely." *Collins*, 875 F.3d at 842. In other words, "a plaintiff who 'pleads facts that show his suit is time-barred . . . has pleaded himself out of court.'" *Britton v. Williams*, No. 16 C 11180, 2017 WL 4410117, at *3 (N.D. Ill. Oct. 4, 2017) (quoting *Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993)).

Here, Defendants argue that Plaintiffs have pleaded themselves out of court by admitting in their complaint that their § 1983 claims are time-barred. The parties agree that the statute of limitations for § 1983 claims in Illinois is two years. (Def.'s MTD at 7–8; Pl.'s Opp'n [23] at 4); *see Lewis v. City of Chicago*, 914 F.3d 472, 478 (7th Cir. 2019) (citing 735 ILCS 5/13-202) ("A § 1983 claim borrows the statute of limitations for analogous personal-injury claims in the forum state; in Illinois that period is two years."). This case, however, turns on the so-called "accrual date," or the date at which the two-year limitations period began to run. Unlike the *length* of the statute of the limitations period, which is governed by state law, "Federal rather than state law governs the accrual date of a claim under § 1983." *Moore v. Burge*, 771 F.3d 444, 447 (7th Cir. 2014) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). Typically, under federal law, "a Fourth Amendment claim accrues at the time of the search or seizure." *Neita v. City of Chicago*, 830 F.3d 494, 498

Case: 1:20-cv-00457 Document #: 25 Filed: 03/22/21 Page 6 of 11 PageID #:196

(7th Cir. 2016) (citing *Wallace*, 549 U.S. at 396). The same is true for claims of false arrest.[1] *Wallace*, 549 U.S. at 391–92, 397. According to the Amended Complaint, the alleged violations in this case occurred in December 2013, more than six years before Plaintiffs filed this case. (Am. Compl. ¶¶ 16–32; *see generally* Compl.)

Plaintiffs contend, however, that the two-year limitations period in this case did not start running until their convictions were reversed on January 24, 2018—placing Plaintiffs' January 21, 2020 filing within the two-year window. They cite *Heck v. Humphrey*, 512 U.S. 477 (1994), where the Supreme Court held that a criminal defendant with a still-valid state conviction cannot pursue § 1983 relief related to the events underlying her conviction if "a judgment in favor of the plaintiff would necessarily imply the invalidity of [her] conviction or sentence." *Id.* at 486–87. Thus, a plaintiff cannot recover for "harm caused by actions whose unlawfulness would render a conviction . . . invalid" until the conviction "has been reversed . . . expunged . . . declared invalid . . . or called into question by a . . . [federal] writ of habeas corpus." *Savory v. Cannon*, 947 F.3d 409, 415 (7th Cir. 2020) (quoting *Heck*, 512 U.S. at 486–87). In cases where the conviction is, ultimately, nullified for one of the listed reasons, the *Heck* Court held that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Heck*, 830 F.3d at 489–90. With this rule in mind, Plaintiffs argue that—given their convictions were reversed on January 24, 2018—this case, filed on January 21, 2020, was timely filed.

The court is not persuaded. *Heck*'s rule, and the accompanying delayed accrual period, applies only to instances in which plaintiffs' § 1983 claims "necessarily imply the invalidity" of their convictions. *Savory*, 947 F.3d at 415 (quoting *Heck*, 512 U.S. at 487). But, "[m]any claims that

---

[1] Technically, *Wallace* holds that the statute of limitations for a false arrest claim begins to run "at the time the claimant becomes detained pursuant to legal process" (i.e., when the false arrest *ends* rather than when it begins). 549 U.S. at 397. This distinction matters little here where even Plaintiffs' convictions—entered on March 21, 2014—occurred well-outside the two-year window that would have allowed Plaintiffs to file this case on January 21, 2020.

concern how police conduct searches or arrests are compatible with a conviction." *Evans v. Poskon*, 603 F.3d 362, 363–64 (7th Cir. 2010); *accord Mordi v. Zeigler*, 870 F.3d 703, 708 (7th Cir. 2017) (citing *Wallace*, 549 U.S. at 397) ("There is an exception to the *Heck* bar, under which a challenge may be brought to actions such as searches and seizures or a false arrest that do not have any necessary effect on the validity of a conviction."). Indeed, "a court's decision not to suppress illegally seized evidence can lead to a conviction without blotting out a § 1983 challenge to the seizure." *Evans*, 603 F.3d at 364. This holds true "[e]ven if no conviction could have been obtained in the absence of the violation." *Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008).

On this point, *Mordi* is instructive. 870 F.3d at 708. There, plaintiff foreign national was driving on the interstate in Illinois when an Illinois state trooper pulled him over, asking why his hood was cracked open and his license plate was inside the windshield rather than on the front bumper. *Id.* at 705. During the traffic stop, another officer arrived with a drug-sniffing dog which sniffed the car and alerted to the presence of drugs; the officers then searched the car and found crack cocaine in the back seat. *Id.* at 706. Mordi was charged with, and pleaded guilty to, possession with intent to distribute the cocaine. *Id.* He later filed a § 1983 claim against the relevant local and state officials, asserting that the traffic stop was a function of racial profiling and was illegally prolonged in order to conduct a canine sniff. *Id.* at 706–07. The district court dismissed the complaint as an improper challenge to the constitutionality of his conviction, but the Seventh Circuit disagreed, observing that "even if [Mordi] were to prevail on his racial-profiling and prolonged-detention arguments, the discovery of the cocaine found within the car would be just as secure, his guilty plea would stand, and his conviction would, too." *Id.* at 708. The court noted that its decision might differ if Mordi were using a Fourth Amendment claim as a "disguised way of asserting his innocence," (i.e., that police had planted the drugs and framed him). *Id.* at 708 (citing *Okoro v. Callaghan*, 324 F.3d 488 (7th Cir. 2003)). But Mordi made no such assertion,

7

so his § 1983 claims alleging Fourth Amendment violations were not barred by *Heck* despite his still-valid conviction. *Mordi*, 870 F.3d at 708.

*Mordi* was not addressing a statute of limitations defense, but the factual overlap between that case and this one is significant. Like Mordi, Plaintiffs here were pulled over on the interstate (Am. Compl. ¶ 18), detained on the side of the road until a drug-sniffing dog arrived (*id.* ¶¶ 22–25), arrested after the drug-sniffing dog alerted to the presence of drugs (and the officers searched for and found those drugs) (*id.* ¶¶ 27–32), charged with possession of a controlled substance with intent to distribute (Grand Jury Charges at 1–2), and convicted pursuant to a guilty plea. (Guilty Pleas at 1–4.) Plaintiffs' § 1983 claim that their Fourth Amendment rights were violated does not imply the invalidity of Plaintiffs' convictions; it instead asserts that the stop was unlawful and that police found contraband only after unreasonably seizing Plaintiffs. (*See* Am. Compl. ¶¶ 39–128.) For the same reasons the Seventh Circuit set out in *Mordi*, these assertions are not at odds with Plaintiffs' conviction and thus would not have been barred by *Heck* before Plaintiffs' convictions were overturned. Accordingly, there is no reason to toll the two-year statute of limitations period, and Plaintiffs' Fourth Amendment claims—filed more than six years after the violations and nearly two years after their release from custody—are time-barred.

The cases Plaintiffs cite do not undermine this conclusion. First, in *McDonough v. Smith*, the Supreme Court held that, "The statute of limitations for a fabricated-evidence claim . . . does not begin to run until the criminal proceedings against the defendant (i.e., the § 1983 plaintiff) have terminated in his favor." 139 S. Ct. 2149, 2154–55 (2019). As the Court explained there, a plaintiff's claims of fabricated evidence "challenge the validity of the criminal proceedings against him in essentially the same manner as the plaintiff in *Heck* challenged the validity of his conviction." *Id.* at 2158. The Court contrasted its holding in *McDonough* with its holding in *Wallace*, that the statute of limitations for false arrest claims runs from the time an unlawful detention (or false imprisonment) comes to an end—that is, when the detained individual is "bound over by a magistrate or arraigned on charges." 549 U.S. at 389–390. A false arrest claim

8

"has a life independent of an ongoing trial or putative future conviction—it attacks the arrest only to the extent it was without legal process, even if legal process later commences." *McDonough*, 139 S. Ct. at 2159. "By contrast, a [fabricated-evidence claim] centers on evidence used to secure an indictment and at a criminal trial . . . It directly challenges—and thus necessarily threatens to impugn—the prosecution itself." *Id*. Plaintiffs in this case have not suggested that Defendants fabricated evidence, nor do their Fourth Amendment claims challenge the validity of the evidence underlying their convictions. *McDonough*'s holding is, thus, inapposite.

Second, in *Savory*, the Seventh Circuit held that, under *Heck*, plaintiff's § 1983 claims did not accrue until he was pardoned by the governor of Illinois. 947 F.3d at 430–31. There, however, the court grounded its ruling in the fact that "[plaintiff]'s claims . . . assert[ ] the suppression of exculpatory evidence and the fabrication of false evidence in order to effect a conviction [and there] is no logical way to reconcile those claims with a valid conviction." *Id.* at 417. Indeed, the court explicitly noted that claims that "do not implicate the validity of the conviction or sentence are not subject to the *Heck* bar." *Id.* at 430–31. Thus, *Savory* too is distinguishable. Finally, *Nelson v. Campbell*, 541 U.S. 637, 647 (2004), actually favors defendants here. The Nelson Court noted in *dicta* that "an inmate could bring a challenge to the lawfulness of a search pursuant to § 1983 in the first instance, even if the search revealed evidence used to convict the inmate at trial, because success on the merits would not *necessarily* imply that the plaintiff's conviction was unlawful." *Id.* (emphasis in original) (internal citations omitted).

Plaintiffs in this case were arrested and charged well before the decisions in *People v. Ringland* that the SAFE unit's highway patrol operation exceeded statutory authority. 2015 Ill. App. 3d 130523 ¶¶ 46–48, 33 N.E.3d at 1029; 2017 IL 119484 ¶ 33, 89 N.E.3d at 746. But Plaintiffs have not argued that *Ringland* should serve as an independent basis for tolling the applicable statute of limitations here. One reason is apparent: even if Plaintiffs' two-year limitations period were tolled until the *Ringland* decisions were filed, Plaintiffs claims would still be time-barred. The Third District Appellate Court filed its opinion in June 2015, while the Illinois

9

Supreme Court affirmed that decision in June 2017—both more than two years before Plaintiffs filed this case on January 21, 2020.

More importantly, *Ringland* would not have been a valid basis for tolling the statute of limitations period in the first place. Judge St. Eve, then of this court, dealt with a similar argument in *Larson v. LaSalle Cnty.*, No. 17-CV-04210, 2018 WL 1156204 (N.D. Ill. Mar. 5, 2018), and drew a distinction between police conduct not authorized by state law, on the one hand, and a federal constitutional violation, on the other. The court rejected plaintiff's contention that, because "*Ringland* revealed SAFE's lack of statutory authorization," she could not have known of her Fourth Amendment claims until *Ringland* was decided. *Id.* at *5. The court noted that the actionability of plaintiff's Fourth Amendment claims "does not depend on whether SAFE officers were patrolling I-80 legally under state law at the time." *Id.* Indeed, "the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established." *Id.* (quoting *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006)); *cf. United States v. Janik*, 723 F.2d 537, 548 (7th Cir. 1983) ("[E]ven if the arrest was invalid under state law, the action of the state officers in arresting [defendant] was not an 'unreasonable' seizure under the Fourth Amendment."). Other courts have followed the *Larson* court's lead on this issue. *Flynn v. Donnelly*, No. 18-2590, 793 Fed. Appx. 431, 434 (7th Cir. 2019) (rejecting the notion that plaintiffs could not have asserted wrongful arrest claims against SAFE officers until the Illinois Supreme Court had ruled in *Ringland*); *Appel v. LaSalle Cnty.*, No. 18 CV 02439, 2019 WL 4189461, at *5 (N.D. Ill. Sept. 4, 2019) (following *Larson* in noting that violations of state law are immaterial to § 1983 claims and rejecting plaintiffs' contention that the statute of limitations should not have accrued until the *Ringland* decision); *Mayo v. LaSalle Cnty.*, No. 18 CV 01342, 2019 WL 3202809, at *2, 5–6 (N.D. Ill. July 15, 2019) (holding plaintiffs' § 1983 claims against SAFE officers were untimely based, in part, on the fact that "*Larson* did not toll the statute of limitations for the plaintiffs' pretrial detention claim").

Here too, Plaintiffs point to nothing revealed by the *Ringland* decisions that would have prevented them from filing their § 1983 claims before the Illinois courts issued those rulings. This court concludes that the two-year limitation period on Plaintiffs' § 1983 claims began running at the time of the alleged Fourth Amendment violations—some six years before Plaintiffs filed this case. The court thus dismisses Plaintiffs' claims against the officers, as well as the *Monell* claims against LaSalle County. *See, e.g.*, *Bell v. Stanek*, No. 14 C 6627, 2016 WL 3364786, at *2 (N.D. Ill. June 17, 2016) ("The same statute of limitations that applies to § 1983 claims brought against individuals also applies to *Monell* claims."). The allegedly unconstitutional conduct underlying those claims took place in December 2013, and the Amended Complaint itself notes that the SAFE unit program was suspended in 2015. (Am. Compl. ¶¶ 14–32, 83, 128.) Having dismissed the claims as untimely, the court declines to address the issue of whether the alleged unreasonable seizure and false arrest were unsupported by probable cause.

## **CONCLUSION**

Defendants' motions to dismiss [11, 18] are granted. Judgment will enter in favor of Defendants.

ENTER:

Dated: March 22, 2021

_____
REBECCA R. PALLMEYER
United States District Judge

11